1

2

3

**UNITED STATES DISTRICT COURT**

4

**NORTHERN DISTRICT OF CALIFORNIA**

5

**SAN JOSE DIVISION**

6

7 | ALICE COTTI and VLADIMIR SERDYUKOV,

Case No.  18-cv-02980-BLF

8 |                         Plaintiffs,

**ORDER DENYING PLAINTIFFS'
MOTION FOR RELIEF; GRANTING
REMAINING DEFENDANTS'
MOTION TO DISMISS THIRD
AMENDED COMPLAINT WITHOUT
LEAVE TO AMEND; AND
DISMISSING ACTION**

9 |             v.

10 | PA CHANG, et al.,

11 |                         Defendants.

12

13

[RE:  ECF 160, 165]

14        Plaintiffs Alice Cotti and Vladimir Serdyukov filed this action after their two children were

15 removed from the family home following police officers' response to a report of domestic

16 disturbance.  Plaintiffs were arrested and the children were taken into protective custody by social

17 workers who were called to the scene.  Plaintiffs claim that the children's removal was without

18 adequate cause, and that social workers' allegations regarding domestic violence, substance abuse,

19 and a non-accidental fracture to one child's leg were without basis.

20        A majority of the twenty-four defendants named in the operative third amended complaint

21 ("TAC") have been dismissed.  Plaintiffs have filed a Motion for Relief, asking the Court to set

22 aside prior dismissal orders, appoint counsel, grant leave to file a fourth amended complaint, seal

23 documents, and permit them to file future documents under seal or to use pseudonyms.  The four

24 remaining defendants, Francesca LeRue, Pa Chang, Jeff Johnson, and Phu Nguyen, have filed a

25 motion to dismiss pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).  The Court vacated

26 the hearing on both motions and submitted them for decision without oral argument.  *See* Order

27 Vacating Hearing, ECF 169.

28

*United States District Court*
*Northern District of California*

1    Plaintiffs' Motion for Relief is DENIED; Defendants' Motion to Dismiss is GRANTED
2    WITHOUT LEAVE TO AMEND; and the action is DISMISSED.

3    **I.    BACKGROUND**

4        Plaintiffs filed the complaint, first amended complaint, and second amended complaint
5    while proceeding *pro se*.  *See* Compl., ECF 1; FAC, ECF 5; SAC, ECF 34.  Plaintiffs thereafter
6    retained counsel who, with leave of Court, filed the operative TAC.  *See* TAC, ECF 109.

7        *Third Amended Complaint*

8        The TAC alleges the following facts:  on May 23, 2017, San Jose Police officers responded
9    to a report of domestic disturbance at Plaintiffs' home.  TAC ¶ 31.  Officers Gaona, Preuss, and
10   Avila arrived at the scene first, and later were joined by Sergeant Tran.  *Id.*  Both Plaintiffs were
11   arrested for domestic violence.  TAC ¶¶ 35-38, 51.  Plaintiffs' licensed childcare provider, Marissa
12   Fernandez, agreed to take custody of their minor children, a three-year-old boy, R.S., and a ten-
13   month-old girl, T.S.  TAC ¶¶ 36, 51.  Hernandez went to Plaintiffs' home, where Plaintiffs made
14   arrangements with Hernandez for their children's care.  TAC ¶ 36.  Sergeant Tran was aware that
15   Plaintiffs had made arrangements for Hernandez to care for the children, but Tran disregarded
16   Plaintiffs' wishes and called the Santa Clara County Department of Family and Child Services to
17   request that a social worker respond at the scene for the children.  TAC ¶ 37.  Social workers Jeff
18   Johnson and Phu Nguyen arrived at the scene and took custody of the children.  TAC ¶¶ 39-41.

19       Later that same day, May 23, 2017, social worker Sarah Gerhart met with the children at
20   the Valley Medical Spark Clinic.  *See* TAC ¶ 44.  A nurse noticed a bruise on T.S. and ordered a
21   skeletal survey.  *See* TAC ¶ 45.  The skeletal survey indicated that T.S. had a possible fracture of
22   her left femur which was suspicious for non-accidental trauma.  TAC ¶ 46.  Both Plaintiffs denied
23   knowledge of the injury.  TAC ¶¶ 49-50.  Gerhart signed juvenile dependency petitions stating
24   that the children were taken into custody as a result of severe domestic violence between Plaintiffs
25   and following Plaintiffs' arrest.  TAC ¶ 51.  The petitions described the circumstances of the arrest
26   and Plaintiffs' history of domestic violence.  Pa Chang, a social worker supervisor, confirmed that
27   Gerhart's statements in the petitions were true and correct. TAC ¶ 55.

28       Nikolas Arnold was appointed to represent Serdyukov during the initial detention

United States District Court
Northern District of California

2

1 | proceedings and John Faulconer was appointed to represent Cotti. TAC ¶ 59. Superior Court

2 | Judge Patrick Tondreau presided. TAC ¶ 62. Judge Tondreau set jurisdictional and detention

3 | hearings for June 15, 2017. *Id.* At the June 15, 2017 proceedings, Cotti was represented by new

4 | counsel, Amy Choi. TAC ¶ 65. The court continued the matter to July 3, 2017. TAC ¶ 66. On

5 | July 3, 2017, Cotti was represented by Wesley Schroeder. TAC ¶ 67. The court set an early

6 | resolution conference for July 13, 2017. *Id.* No resolution was reached, and the court ultimately

7 | sustained the petitions. TAC ¶¶ 68-70.

8 | R.S. was scheduled to receive therapeutic services from Rebekah Children's Services.

9 | TAC ¶ 74. Amy Guy, an attorney appointed to represent R.S. and T.S., told Plaintiffs that she

10 | would never agree to the children returning home unless Plaintiffs submitted to multiple

11 | psychological examinations, waived their privacy rights, and dropped their appeals. TAC ¶¶ 24,

12 | 75. On April 13, 2018, the children were returned to Plaintiffs' custody. TAC ¶ 76. On May 2,

13 | 2018, the parties met to determine whether the previously sustained petitions should be dismissed.

14 | *Id.* No agreement was reached. *Id.* The court advised that it could not set the matter for trial until

15 | after May 14, 2018. *Id.* Serdyukov felt compelled to waive trial and agree that the children were

16 | at risk in the home to speed resolution of the case. TAC ¶ 76.

17 | Based on these allegations, Plaintiffs' TAC asserts federal and state law claims against the

18 | following twenty-four individuals and entities: City of San Jose ("City"); San Jose Police

19 | Department ("SJPD"); Officer Gaona; Officer Avila; Sergeant Tran; County of Santa Clara

20 | ("County"); Social Security Agency of Santa Clara County ("SSA"); Department of Social Services

21 | ("DSS"); Santa Clara County Department of Family and Child Services ("DFCS"); Francesca LeRue;

22 | Jeff Johnson; Phu Nguyen; Sarah Gerhart; Pa Chang; Nicolas Arnold; John Faulconer; Wesley

23 | Schroeder; Amy Choi; Family Legal Advocates ("FLA"); Dependency Advocacy Center

24 | ("DAC"); Legal Advocates for Children and Youth ("LACY"); Amy Guy; Judge Patrick

25 | Tondreau; and Rebekah Children's Services. *See generally* TAC, ECF 109.

26 | The TAC contains a First Cause of Action for Violation of Civil Rights under 42 U.S.C. §

27 | 1983, which is divided into four "counts": Count 1, Warrantless Removal/Removal without a

28 | Court Order, Notice, or Exigency; Count 2, Judicial Deception; Count 3, Due Process; and Count

United States District Court
Northern District of California

3

4, *Monell* Liability.  TAC ¶¶ 77-110.  The TAC also contains a Second Cause of Action for legal malpractice under California state law.  TAC ¶¶ 111-115.

### June 24, 2019 Order

A number of the defendants filed motions challenging the TAC under one or more of the Federal Rules of Civil Procedure, including Rules 8, 12(b)(1), and 12(b)(6).  No oppositions were filed.  On June 24, 2019, the Court issued an order ("June 24 Order"), ECF 125, addressing the pending motions and summarizing the status of the case:

(1) Seven defendants were dismissed without leave to amend pursuant to their unopposed motions to dismiss:  Rebekah Children's Services, City, SJPD, Judge Tondreau, Choi, Arnold, and County.  The Court did not rely solely on Plaintiffs' failure to oppose the motions to dismiss, but provided a reasoned decision explaining why the TAC failed to state a claim.

(2) Eight defendants were dismissed *sua sponte*, without prejudice to a motion for leave to amend the pleading, because they were added in violation of the Court's prior order:  Gaona, Avila, Tran, FLA, DAC, Schroeder, Faulconer, and LACY.  Plaintiffs were directed to file any motion for leave to amend to add those defendants by July 24, 2019.

(3) Service of process was quashed as to five defendants:  LeRue, Chang, Nguyen, Johnson, and Gerhart.  Plaintiffs were granted thirty days to effect service of process.

(4) Four defendants had not been served:  DSS, DFCS, SSA, and Guy.  Plaintiffs were directed to file a status report as to those defendants, and the defendants as to whom service of process was quashed, on or before July 26, 2019.

### September 4, 2019 Order

Plaintiffs did not follow the Court's directions.  They did not file a noticed motion for leave to amend to add defendants; did not serve LeRue, Chang, Nguyen, Johnson, or Gerhart; and did not file a status report with respect to DSS, DFCS, SSA, or Guy.  Instead, Plaintiffs filed a "Motion to Set Aside Order of June 24, 2019; Motion to Add Defendants; Motion for Leave to File Fourth Amended Complaint."  *See* Pls.' Motion to Set Aside, ECF 126.  Plaintiffs based their motion on the fact that their attorney, Michelle Brenot, was ill when Plaintiffs' oppositions to the motions to dismiss the TAC were due.

4

1       On September 4, 2019, the Court issued an order ("September 4 Order") denying

2  Plaintiffs' motion to set aside its June 24 Order.  *See* September 4 Order, ECF 136.  The Court

3  found that Plaintiffs had not articulated any legal basis for setting aside the June 24 Order, and that

4  even if Plaintiffs' motion were construed as seeking relief under Federal Rule of Civil Procedure

5  60(b), Plaintiffs had not demonstrated entitlement to relief under that rule.  The Court denied

6  Plaintiffs' motion for leave to amend as procedurally improper, noting that the motion was not

7  filed as a noticed motion and was not accompanied by a proposed amended pleading.  Finally, the

8  Court ordered Plaintiffs to show cause why all unserved defendants should not be dismissed.

9       *November 12, 2019 Order*

10      Plaintiffs' counsel requested two extensions of the deadline to respond to the Order to

11  Show Cause, explaining that she recently had been diagnosed with a serious medical condition.

12  *See Ex Parte* Applics., ECF 148, 150.  Both requested extensions were granted, resulting in a

13  response deadline of October 7, 2019.  *See* Orders, ECF 149, 151.  After more than a month

14  elapsed following the October 7, 2019 deadline, the Court issued an order dated November 12,

15  2019 ("November 12 Order), noting that Plaintiffs had filed proofs of service of process with

16  respect to LeRue, Chang, Johnson, and Nguyen, but not with respect to any of the other unserved

17  defendants.  *See* November 12 Order, ECF 152.  The Court dismissed the unserved defendants

18  without prejudice for failure to effect service of process as required under Federal Rule of Civil

19  Procedure 4(m).  The Court discharged the Order to Show Cause with respect to LeRue, Chang,

20  Johnson, and Nguyen, and clarified that those four were the only defendants remaining in the case.

21      *Initial Case Management Conference on December 5, 2019*

22      The Court held the Initial Case Management Conference on December 5, 2019.  *See*

23  Minute Entry, ECF 158.  Plaintiffs' counsel, Ms. Brenot, neither filed a case management

24  statement nor appeared on Plaintiffs' behalf.  At the hearing, Defendants' counsel stated that his

25  efforts to reach Ms. Brenot had been unsuccessful.  Court staff could not reach Ms. Brenot at the

26  telephone number provided to the Court.  The Court issued an Order Following Initial Case

27  Management Conference memorializing these facts and observing that Ms. Brenot previously had

28  reported diagnosis of a serious health condition.  *See* Order Following Init. CMC, ECF 159.  The

United States District Court
Northern District of California

5

1    Court indicated, however, that the case needed to proceed and it directed the defendants to file

2    their anticipated motion to dismiss. *See id.*

3                    *Remaining Defendants' Motion to Dismiss*

4            On December 19, 2019, LeRue, Chang, Johnson, and Nguyen filed the present motion to

5    dismiss. *See* Defs.' MTD, ECF 160. Plaintiffs filed a *pro se* opposition as well as a substitution

6    of attorney indicating that they are *pro se* once again. *See* Pls.' Opp., ECF 161; Pls.' Substitution

7    of Attorney, ECF 162. Defendants filed a reply. Defs.' Reply, ECF 163. The Court vacated the

8    March 19, 2020 hearing and submitted the Motion to Dismiss for decision without oral argument.

9    *See* Order Vacating Hearing, ECF 169.

10                   *Plaintiffs' Motion for Relief*

11           On January 21, 2020, Plaintiffs filed a Motion for Relief, asking the Court to set aside prior

12   orders, appoint counsel, grant leave to amend, seal documents, and allow them to file future

13   documents under seal or use pseudonyms. *See* Motion for Relief, ECF 165. Previously dismissed

14   defendants Choi and Arnold filed opposition, as did remaining defendants LeRue, Chang,

15   Johnson, and Nguyen. *See* Choi/Arnold Opp., ECF 167; Defs.' Opp., ECF 168. Plaintiffs did not

16   file a reply. The Court vacated the March 19, 2020 hearing and submitted the Motion for Relief

17   for decision without oral argument. *See* Order Vacating Hearing, ECF 169.

18   **II.    PLAINTIFFS' MOTION FOR RELIEF**

19           As noted above, Plaintiffs request several forms of relief, addressed in turn as follows.

20           **A.    Motion to Set Aside June 24 Order**

21           Plaintiffs ask the Court to set aside its June 24 Order with respect to the dismissal of

22   Defendants Tran[1], SJPD, Choi, Arnold, and County.

23           The Court dismissed Tran because he was added to the TAC in violation of the Court's

24   prohibition on adding new claims or parties without leave. *See* June 24 Order at 2. The dismissal

25   _____

26   [1] The Court previously dismissed Sergeant *Vu* Tran. *See* September 4 Order at 6, ECF 34.
     Plaintiffs' Motion for Relief refers to Sergeant Jeff Tran and Sergeant Ken Tran. *See* Motion for
27   Relief at 2, 6, ECF 165. It is unclear whether Plaintiffs' references to "Jeff" and "Ken" Tran are in
     error or whether more than one Sergeant Tran was involved in this case. The Court need not
28   resolve that question because Plaintiffs have not demonstrated grounds either to set aside the
     dismissal of Sergeant Vu Tran or to add new claims against Vu Tran or another Tran defendant.

was without prejudice to a noticed motion for leave to amend.  *See id.*  Plaintiffs do not acknowledge this basis for Tran's dismissal or explain why dismissal was improper.

The Court dismissed SJPD, Choi, Arnold, and County on the merits pursuant to their unopposed motions to dismiss.  *See* June 24 Order at 9-16.  Plaintiffs assert that the failure to oppose the motions to dismiss was due to excusable neglect stemming from the illness of their attorney, Ms. Brenot, and they seek to set aside the June 24 Order on that basis.  As an initial matter, the Court did not grant the motions solely on the ground that they were unopposed.  As reflected in the twenty-page June 24 Order, the Court analyzed the motions to dismiss on the merits and concluded that the allegations of the TAC failed to state a claim upon which relief could be granted with respect to the moving defendants.  *See* June 24 Order, ECF 125.

Moreover, as the remaining defendants point out, Plaintiffs previously moved to set aside the June 24 Order on the ground of excusable neglect, and that motion was denied by the Court in its September 4 Order.  *See* September 4 Order, ECF 136.  The Court specifically considered whether Plaintiffs were entitled to relief on the basis of excusable neglect under Federal Rule of Civil Procedure 60(b)(1) and, after applying the factors set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993), it concluded that no relief was warranted.  *See* September 4 Order at 4-5.  Plaintiffs have not sought reconsideration of the September 4 Order and their attempt to relitigate that order in the context of the current Motion for Relief is improper.

Plaintiffs assert that they provided Ms. Brenot with twenty pages of factual allegations about misconduct on the part of Defendants Choi and Arnold "which didn't make it to the TAC due to Plaintiff's Counsel illness."  Motion for Relief at 3, ECF 165.  Choi and Arnold were appointed to represent Cotti and Serdyukov, respectively, in the underlying dependency proceedings.  TAC ¶¶ 18, 21.  Plaintiffs present no basis to conclude that Ms. Brenot's failure to include factual allegations regarding Choi and Arnold in the TAC was due to neglect stemming from Ms. Brenot's illness rather than counsel's exercise of professional judgment.  Ms. Brenot first appeared in the case while multiple motions to dismiss were pending with respect to Plaintiffs' second amended complaint, which they had filed *pro se*.  In granting those motions with leave to amend, the Court noted that Ms. Brenot had acknowledged that the second amended

1    complaint was deficient and promised to clean up the pleading if granted leave to amend.  *See*

2    Order Granting Motions to Dismiss Second Amended Complaint at 2, ECF 93.  Ms. Brenot

3    subsequently pared down Plaintiff's eighty-page second amended complaint to the operative

4    thirty-five-page TAC.  *Compare* SAC, ECF 34, *with* TAC, ECF 109.  Counsel's decision to omit

5    certain facts from the TAC does not provide a basis for setting aside the Court's dismissal order.

6            Accordingly, Plaintiffs' motion to set aside the June 24 Order is DENIED.

7        **B.      Motion for Leave to File Fourth Amended Complaint**

8            Plaintiffs seek leave to file a Fourth Amended Complaint to add defendants and claims.

9    Plaintiffs list the defendants they wish to add and briefly identify their alleged roles in the removal

10   of Plaintiffs' children:  Sergeant Tran, who allegedly made the decision to remove the children;

11   Braeden Sullivan, counsel for DFCS; Jessica Lum, a nurse practitioner who allegedly submitted

12   the children to x-rays without obtaining legal authorization; Doctors James Gamble and Steven

13   Frick, whose conduct allegedly interfered with Plaintiffs' constitutional rights; and the Valley

14   Medical Spark Clinic, which allegedly is vicariously liable for Nurse Lum.  *See* Motion for Relief

15   at 6-7, ECF 165.  Plaintiffs also list the claims they wish to add, including claims for unreasonable

16   search and interference with familial association in violation of the Fourth Amendment, state

17   statutory claims, intentional infliction of emotional distress, negligent misdiagnosis, negligent

18   infliction of emotional distress, and declaratory relief.  *See id.* at 7-8.

19           What Plaintiffs have *not* done is submit a proposed fourth amended complaint with their

20   motion.  Civil Local Rule 10-1 requires that "[a]ny party filing or moving to file an amended

21   pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior

22   pleading by reference."  Plaintiffs' prior motion for leave to file a fourth amended complaint was

23   denied in part based on their failure to provide a copy of their proposed amended pleading.  *See*

24   September 4 Order at 6, ECF 136.  That denial was without prejudice to a subsequent motion that

25   "complies in all respects with the Civil Local Rules and this Court's Standing Order Re Civil

26   Cases."  The Court expressly cautioned Plaintiffs that "[i]n particular, any motion for leave to

27   amend must include a proposed amended pleading."  *Id.*

28           Because Plaintiffs have failed to comply with the Civil Local Rules and the Court's

United States District Court
Northern District of California

8

United States District Court
Northern District of California

express direction to provide a proposed amended pleading, their motion for leave to file a fourth amended complaint is DENIED.

### C.      Motion for Appointment of Counsel

Plaintiffs request that the Court appoint counsel to represent them in this case. "Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Id.* In making a determination whether exceptional circumstances exist, the court must consider both the ability of the plaintiff to articulate his or her claims *pro se* and the plaintiff's likelihood of success on the merits. *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

Plaintiffs do not qualify as "indigent civil litigants" under § 1915(e), as their application for leave to proceed *in forma pauperis* was denied. *See* Order Denying IFP Application, ECF 4. Moreover, there is no likelihood that Plaintiffs will succeed on the merits of their claims, because this action is subject to dismissal for the reasons stated in this order. Accordingly, Plaintiffs' motion for appointment of counsel is DENIED.

### D.      Motion to Set Aside November 12 Order

Plaintiffs ask the Court to set aside the portion of its November 12 Order dismissing unserved defendants. *See* November 12 Order at 2, ECF 152. The Court raised the issue of unserved defendants almost a year ago in June 2019. *See* June 24 Order, ECF 125. Plaintiffs' counsel, Ms. Brenot, was actively litigating the case at that time. She filed several documents in July 2019 and August 2019. *See* ECF 126, 127, 128, 133. In September 2019, the Court issued an Order to Show Cause why the unserved defendants should not be dismissed. *See* September 4 Order, ECF 136. Ms. Brenot responded by filing proofs of service of process on LeRue, Chang, Johnson, and Nguyen in September 2019. *See* ECF 143, 145, 146, 147. Ms. Brenot also requested and received two extensions of the deadline to respond to the Order to Show Cause. *See* Orders, ECF 149, 151. A month after expiration of the last extended deadline, the Court dismissed all unserved defendants. *See* November 12 Order, ECF 152.

Plaintiffs now request that the Court reinstate the unserved defendants, citing Federal Rule

of Civil Procedure 4(m) for the proposition that the Court must grant additional time for service if the plaintiff shows "good cause" for the failure to serve.  *See* Fed. R. Civ. P. 4(m).  Plaintiffs' argument is unpersuasive because the Court granted several extensions of time for service before dismissing the unserved defendants.  Nothing in Rule 4(m) mandates that the Court set aside a dismissal for lack of service even if the plaintiff shows good cause.  Moreover, Plaintiffs have not shown good cause in this case.  Plaintiffs assert that they retained a private investigator who was unable to serve Gerhart, and that they mailed Gerhart a waiver of service form on November 29, 2019.  However, Gerhart did not return the waiver of service form and Plaintiffs have not taken further steps to serve her.  Plaintiffs assert that DSS and DFCS were served with process in August 2018, directing the Court's attention to proofs of service filed at ECF 33 and 36.  Those docket entries contain proofs of service for a number of other defendants, but not for DSS or DFCS.  *See* ECF 33 and 36.  The Court notes that the proofs of service on individual defendants Lightbourne and LeRue indicate that they were served at the offices of DSS and DFCS, respectively.  *See* ECF 33 and 36.  However, there are no proofs showing that the agencies themselves were served with process.

Plaintiffs argue that they have made good faith efforts to serve all defendants, but that defendants have evaded service of process.  Plaintiffs do not explain how the state agency defendants have evaded service of process when their addresses for service are matters of public record.  Nor do Plaintiffs present evidence that the individual defendants deliberately evaded service.  The Court concludes that Plaintiffs have not demonstrated any factual or legal basis to vacate dismissal of the unserved defendants and grant additional time for service.

Plaintiffs' request to set aside the November 12 Order is DENIED.

**E.    Motion to Seal Documents and/or Use Pseudonyms in Future Filings**

Finally, Plaintiffs ask the Court to seal documents containing their full names and to permit Plaintiffs to file future documents under seal or to use pseudonyms in lieu of their full names.  Defendants correctly point out that Plaintiffs have not satisfied the applicable standards for sealing or using pseudonyms.

### 1.      Sealing

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"  *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).  Consequently, filings that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016).  Filings that are only tangentially related to the merits may be sealed upon a lesser showing of "good cause."  *Id*. at 1097.  Sealing motions filed in this district also must be "narrowly tailored to seek sealing only of sealable material."  Civil L.R. 79-5(b).

Plaintiffs have not shown either compelling reasons or good cause for sealing documents in this case.  They express a desire to seal their full names, but they do not provide any reason for sealing.  Nor have they identified any particular documents or portions of documents to be sealed.  As a result, their sealing request is not narrowly tailored.

Plaintiffs' request for sealing is DENIED.

### 2.      Pseudonyms

The use of fictitious names is directly at odds with the public's common law right of access to judicial proceedings.  *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (citing *Nixon*, 435 U.S. at 598-99).  Moreover, Federal Rule of Civil Procedure 10 requires a complaint to "name all the parties."  Fed. R. Civ. P. 10(a).  Litigants may preserve their anonymity in judicial proceedings only "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile Corp.*, 214 F.3d at 1068.  The Ninth Circuit has identified three situations in which parties have been permitted to proceed anonymously:  (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution. *Id.*  The Court must attempt to strike a "balance between a

1   party's need for anonymity and the interests weighing in favor of open judicial proceedings." *Id.*

2   at 1069.

3       Plaintiffs have not addressed these standards at all.  Consequently, they have failed to

4   show that this case presents special circumstances in which the need for anonymity outweighs the

5   interest in public proceedings.  Plaintiffs' request to proceed under pseudonyms is DENIED.

6       **F.      Conclusion**

7       Plaintiffs have failed to establish a factual or legal basis for any of the relief they request.

8   Accordingly, Plaintiffs' Motion for Relief is DENIED in its entirety.

9   **III.   DEFENDANTS' MOTION TO DISMISS**

10      The four remaining defendants, LeRue, Chang, Johnson, and Nguyen ("Defendants"), have

11  filed a motion to dismiss the TAC pursuant to Rules 8 and 12(b)(6).  Johnson and Nguyen are

12  social workers employed by DFCS.  TAC ¶¶ 13-14.  They were called to Plaintiffs' home by

13  police and took custody of the children when Plaintiffs were arrested.  TAC ¶¶ 37-41.  Chang is a

14  supervisor employed by DFCS.  TAC ¶ 12.  LeRue is the Director of DFCS with "supervisory

15  responsibility and authority" over DFCS and its social worker employees.[2]  TAC ¶ 11.

16      **A.      Legal Standards**

17          **1.      Rule 8**

18      Rule 8 requires that a complaint contain "a short and plain statement of the claim showing

19  that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple,

20  concise, and direct," Fed. R. Civ. P. 8(d).  "A complaint violates Rule 8 if a defendant would have

21  difficulty responding to the complaint."  *Fox v. Bureau of Prisons*, No. 2:19-CV-00567-R(MAA),

22  2019 WL 566429, at *6 (C.D. Cal. Feb. 12, 2019).  "This Court has discretion to dismiss for

23  failure to comply with the requirements of Rule 8 even when the complaint is not wholly without

24  merit," and such failure provides "a basis for dismissal independent of Rule 12(b)(6)."  *Id.*

25  (quotation marks and citation omitted).

26

27  ───────────────

28  [2] Plaintiffs also allege that LeRue was the Director of SSA.  TAC ¶ 11.  However, their allegations of liability against LeRue center on her supervisory authority over DFCS social workers.  TAC ¶¶ 85, 96.

United States District Court
Northern District of California

### 2.     Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.     Discussion

Each of the remaining Defendants is named in one or more counts of the First Cause of Action for Violation of Civil Rights.  Count 1, Warrantless Removal/Removal without a Court Order, Notice, or Exigency, alleges that the children were taken into protective custody unlawfully.  Count 2, Judicial Deception, alleges that certain defendants lied to the dependency court.  Count 3, Due Process, asserts that Plaintiffs were denied Due Process when they did not receive adequate notice of certain legal proceedings and they were not given sufficient time to review documents in preparation for those proceedings.[3]

Defendants argue that Plaintiffs have not alleged facts supporting a claim for supervisory liability against LeRue; Plaintiffs have not alleged facts supporting a claim for violation of their constitutional rights; Defendants are entitled to absolute immunity; and Defendants are entitled to qualified immunity.  Plaintiffs argue that they have stated viable claims against LeRue, Chang, Johnson, and Nguyen.  In the Court's view, the most sensible approach to these arguments is to evaluate them on a Defendant-by-Defendant basis, although the parties' papers are not structured in that manner.  The Court therefore addresses the arguments relevant to LeRue first, then the arguments relevant to Chang, and finally the arguments relevant to Johnson and Nguyen.

---

[3] The First Cause of Action also contains a fourth count, asserting *Monell* liability against the County.  Because the County has been dismissed from the action, Count 4 no longer is at issue.

United States District Court
Northern District of California

### 1.    LeRue

LeRue is named as a defendant in Count 1 (Warrantless Removal), Count 2 (Judicial Deception), and Count 3 (Due Process) of the First Cause of Action.  As noted above, LeRue is the Director of DFCS with supervisory authority over its social worker employees.  An official who is a supervisor may be held liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation marks and citation omitted).

The only allegations against LeRue appear in paragraphs 11, 85, 88, and 96 of the TAC.  In paragraph 11, identifying LeRue as a defendant, Plaintiffs allege that LeRue "had the power to promulgate and implement policies governing the conduct of Santa Clara County social workers in relation to the agency's handling of juvenile dependency matters."  TAC ¶ 11.  In paragraph 85, contained in Count 1, Plaintiffs allege that LeRue "willfully improperly and/or negligently train[ed] or supervised the social workers and permitted them to unconscionably violate Plaintiffs' rights."  TAC ¶ 85.  Plaintiffs allege in paragraph 88 that the conduct of LeRue and other defendants "was intentional, done with malice, oppression and fraud, and with conscious disregard for the rights of Plaintiffs."  TAC ¶ 88.  Finally, in paragraph 96, contained in Count 2, Plaintiffs allege that LeRue "had a duty to train and supervise" employees and that she "willfully improperly and/or negligently trained or supervise[d]" employees with the result that "Plaintiffs' civil rights have been violated."  TAC ¶ 96.

Defendants argue that these allegations are insufficient to make out a claim against LeRue.  The Court agrees.  None of the allegations suggest that LeRue had any personal involvement in the children's removal.  Plaintiffs allege liability against LeRue based on her authority to promulgate policies and based on her role as a supervisor.  Under the standard set forth above, Plaintiffs must allege facts showing that LeRue promulgated particular policies that led to the alleged constitutional deprivations, or that LeRue's improper training or supervision of social workers led to the alleged constitutional deprivations.  *See Starr*, 652 F.3d at 1207.  Plaintiffs do not allege any facts at all regarding policies LeRue promulgated, LeRue's training of

14

1   social workers, or LeRue's supervision of social workers.  Nor do Plaintiffs allege any facts

2   establishing a connection between such policies, training, or supervision and the children's

3   removal.  Accordingly, Plaintiffs have failed to state a claim against LeRue.

4       In their opposition, Plaintiffs assert that "it was routine" for LeRue to let DFCS seize

5   children without a warrant and without probable cause, condone fabrication of medical records,

6   and violate parents' constitutional rights.  Pls.' Opp. at 9, ECF 161.  These allegations do not

7   appear in the TAC, and even if they did, they are entirely conclusory and therefore would be

8   insufficient to state a claim of supervisory liability against LeRue.

9       Defendants' motion to dismiss is GRANTED as to LeRue.

10              **2.    Chang**

11      Chang is named as a defendant in Count 2 (Judicial Deception) and Count 3 (Due Process)

12  of the First Cause of Action.  Chang is a supervisor employed by DFCS.  As noted above, an

13  official who is a supervisor may be held liable under § 1983 based on either (1) her personal

14  involvement in the constitutional deprivation or (2) a sufficient causal connection between her

15  wrongful conduct and the constitutional deprivation.  *See Starr*, 652 F.3d at 1207.

16      The only allegations against Chang appear in paragraphs 12, 55, and 96 of the TAC.  In

17  paragraph 12, identifying Chang as a defendant, Plaintiffs allege that Chang is a "Social Worker

18  Supervisor" employed by DFCS.  TAC ¶ 12.  In paragraph 55, Plaintiffs allege that, "On or about

19  May 24, 2017, Pa Chang, Social Work Supervisor, declared, under penalty of perjury each

20  statement made by Gerhart was true and correct which [*sic*] absolutely false.  Pa Chang acted

21  either with knowledge that her actions [*sic*] false or with willful negligence with respect to the

22  truth of her statements."  TAC ¶ 55.  The "statement[s] made by Gerhart" refer to the Initial

23  Hearing Report and Juvenile Dependency Petitions prepared by Gerhart, a social worker who has

24  been dismissed from this action.  *See* TAC ¶ 54.  Finally, in paragraph 96, Plaintiffs allege that

25  Chang "had a duty to train and supervise" employees and that she "willfully improperly and/or

26  negligently trained or supervise[d]" employees with the result that "Plaintiffs' civil rights have

27  been violated."  TAC ¶ 96.

28      It appears that Plaintiffs are asserting liability against Chang based on both her personal

15

United States District Court
Northern District of California

1   involvement in the alleged constitutional deprivations and her role as a supervisor.  Addressing the

2   claim of supervisory liability first, the Court must determine whether Plaintiffs have alleged facts

3   showing that Chang's improper training or supervision of social workers led to the alleged

4   constitutional deprivations.  *See Starr*, 652 F.3d at 1207.  Plaintiffs do not allege any facts at all

5   regarding Chang's training or supervision of social workers.  Nor do Plaintiffs allege any facts

6   establishing a connection between such training or supervision and the children's removal.

7   Accordingly, Plaintiffs have failed to state a claim against Chang for supervisory liability.

8          With respect to liability based on Chang's personal involvement in the alleged

9   constitutional deprivations, Chang signed off on the Initial Hearing Report and Juvenile

10   Dependency Petitions prepared by Gerhart.  *See* TAC ¶¶  54-55.  According to Plaintiffs, Gerhart

11   made a number of false statements in those documents, and Chang either knew the statements

12   were false or acted "with willful negligence" as to whether the statements were false.  TAC ¶¶ 51-

13   54.  The Court understands these allegations to be the basis for Plaintiffs' assertion of Count 2

14   (Judicial Deception) against Chang.

15          Before evaluating the adequacy of Count 2 (Judicial Deception), the Court observes that

16   Plaintiffs' allegations against Chang are wholly unrelated to Count 3 (Due Process).  Count 3

17   alleges that "Defendants" failed to give Plaintiffs adequate notice of court proceedings in violation

18   of their Due Process rights.  *See* TAC ¶¶ 97-106.  Nothing in the TAC suggests that Chang had

19   responsibility for, or played a role in, giving Plaintiffs notice of court proceedings.  Consequently,

20   Plaintiffs have failed to state a claim against Chang with respect to Count 3 (Due Process).

21          In light of the foregoing, Plaintiffs' only potentially viable claim against Chang is Count 2

22   (Judicial Deception).  A parent has a "due process right to be free from deliberately false

23   statements during juvenile court proceedings."  *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir.

24   2018).  "[T]he use of judicial deception to obtain an order to remove a child from his or her

25   parent's custody violates the Fourteenth Amendment due process right to familial association."

26   *Sigal v. Cty. of Los Angeles*, No. 2:17-CV-04851-RGK-AGR, 2018 WL 5899636, at *4 (C.D. Cal.

27   Jan. 17, 2018).  "In order to prevail on a judicial deception claim, a plaintiff must prove that (1)

28   the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the

plaintiff's deprivation of liberty." *Keates*, 883 F.3d at 1240.  The term "deliberate fabrication" encompasses both statements that the official knew were false and those the official would have known were false had he not recklessly disregarded the truth. *See id.*  The Ninth Circuit has summarized the required showing as follows:  A plaintiff asserting a claim of judicial deception "must make (1) a substantial showing of deliberate falsehood or reckless disregard for truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Hart v. Cty. of Los Angeles*, 649 F. App'x 462, 463 (9th Cir. 2016) (quotation marks and citation omitted). A claim of judicial deception may not be based on statements resulting from negligence or good faith mistakes, "[n]or may a claim of judicial deception be based on an officer's erroneous assumptions about the evidence he has received." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (addressing claim of judicial deception in context of warrant application).

Plaintiffs allege that "Chang acted either with knowledge that her actions [*sic*] false or with willful negligence with respect to the truth of her statements" that the Initial Hearing Report and Juvenile Dependency Petitions prepared by Gerhart were true and correct.  TAC ¶ 55.  While the phrase "willful negligence" does not align precisely with the language used by the Ninth Circuit in defining the elements of judicial deception, the Court understands Plaintiffs to be alleging that Chang either knew Gerhart's statements were false or acted with reckless disregard for the truth. Plaintiffs' judicial deception claim therefore turns on whether they have alleged facts showing that the Initial Hearing Report and Juvenile Dependency Petitions prepared by Gerhart contained false statements, and that Chang knew as much or acted with reckless disregard for the truth when she signed off on those documents.

Defendants argue that Plaintiffs have not alleged facts demonstrating the falsity of any statements in the Initial Hearing Report or Juvenile Dependency Petitions, or Chang's knowledge of any falsity.  Defendants focus on several key statements at the crux of Plaintiffs' judicial deception claim.  Those statements are discussed below.

         a.      *The children "were placed into protective custody by San Jose Police as a result of severe domestic violence between the mother, Alice Cotti, and the father, Vladimir Serdyukov."*  TAC ¶¶ 51-52.  Plaintiffs allege that Gerhart's characterization of the domestic

United States District Court
Northern District of California

violence as "severe" was false, because it did not rise to the level of "severe physical abuse" as defined in DFCS Policies and Procedures.  *See* TAC ¶ 51 & n.3.  Plaintiffs simply ignore the difference between the phrase used by Gerhart, "severe domestic violence," and the phrase defined in the DFCS Policies and Procedures, "severe physical abuse."  Plaintiffs do not allege facts showing that the two phrases have the same meaning or are used interchangeably by social workers.

Plaintiffs also allege that Gerhart's characterization of the domestic violence as "severe" was false because neither parent was injured.  *See* TAC ¶ 51.  However, Plaintiffs do not dispute Gerhart's description of the altercation to include an argument during which Serdyukov started taking video of Cotti with his cell phone, Cotti tried to grab the cell phone, and Cotti wrapped her arms and legs around Serdyukov and punched, kicked, and bit him.  *See* TAC ¶ 52.  That Plaintiffs do not view such behavior as "severe" domestic violence does not render false Gerhart's characterization of the violence as "severe."  At most Plaintiffs' argument demonstrates a difference of opinion regarding the severity of the altercation.

b.      *"Both parents were arrested for domestic violence leaving the children without a caretaker."*  TAC ¶¶ 51-52.  Plaintiffs appear to assert that this statement was false because only Cotti was arrested, although Plaintiffs' allegation is unclear because of an apparent typo:  "Second, on [*sic*] Plaintiff Cotti was arrested for domestic violence."  TAC ¶ 52.  As an initial matter, Plaintiffs allege elsewhere in the TAC that both parents were arrested.  *See* TAC ¶ 54 ("Even though the *parents* were arrested . . . .") (emphasis added).  Plaintiffs also refer to "*their* short and temporary arrests" in their opposition to the motion to dismiss.  See Pl.'s Opp. at 31, ECF 161 (emphasis added).  Accordingly, the asserted falsity of Gerhart's statement regarding both parents' arrest is not apparent.  Moreover, even if it is true that only Cotti was arrested, Plaintiffs allege no facts showing that Gerhart knew as much.  Gerhart is not alleged to have been at Plaintiffs' home when they were taken into police custody.  Based on Plaintiffs' allegations, it appears that Gerhart came into the case when she met with the children at the Valley Medical Spark Clinic on May 23, 2017.  *See* TAC ¶ 44.  Plaintiffs do not allege how Gerhart would have known that the police took both parents into custody but ultimately arrested only Cotti.  Accordingly, Plaintiffs have failed to

18

United States District Court
Northern District of California

1  allege that Gerhart's statement that both parents were arrested was knowingly false or made with

2  reckless disregard of the truth.

3       c.      *"On 5/23/2017, the skeletal survey indicated that the child [T.S.] has a possible*

4  *fracture on her left distal femur which the radiologist found suspicious. The parents have no*

5  *reasonable explanation for the injury and doctors determined the injury was caused by non-*

6  *accidental trauma."*  TAC ¶ 51.  Plaintiffs allege that because the follow-up of the skeletal survey

7  was scheduled for May 26, 2017, it is clear that "doctors" had not yet read the skeletal survey and

8  made a determination as to existence and cause of injury when Gerhart signed the Initial Hearing

9  Report and Juvenile Dependency Petitions on May 24, 2017.[4]  *See* TAC ¶ 51.  Plaintiffs also argue

10  that T.S. did not suffer a fracture while in her parents' custody and control, and that "[e]ven if T.S.

11  had a fracture, that fact alone did not constitute 'severe physical harm.'"  TAC ¶ 51.  Plaintiffs

12  claim that Gerhart "made unreasonable extrapolation from known facts" to make the challenged

13  statements.  TAC ¶ 51.

14       Plaintiffs' factual allegations do not support their assertion that Gerhart's statements were

15  false or reckless.  Plaintiffs' allegations that T.S. did not suffer the fracture while in their custody,

16  and that the fracture was not serious, are entirely conclusory.  With respect to the statement

17  regarding the doctors' determinations, Gerhart may have been referring to the radiologist.  A

18  radiologist is "a physician specializing in medical radiology."  *See Merriam-Webster Online*

19  *Dictionary*, https://www.merriam-webster.com/dictionary/radiologist (last visited May 19, 2020).

20  Plaintiffs appear to assume that the doctors referenced by Gerhart were doctors who had not yet

21  evaluated the skeletal survey.  However, that assumption is insufficient to form the basis of a

22  judicial deception claim.

23       d.      *"Further, the mother as [sic] a substance abuse history and uses marijuana on a*

24  *daily basis, including while the children are in the home. . . .  The mother's active substance abuse*

25  *problem interferes with her judgment, which places the children are (sic) risk of physical harm."*

26  _____

27  [4] Plaintiffs allege that Gerhart signed the documents on May 24, 201*8*, but this appears to be a
typographical error.  Based on the other allegations in the TAC, the Court understands Plaintiffs to

28  be alleging that Gerhart signed the documents on May 24, 2017, the day after removal of the
children.

United States District Court
Northern District of California

1   TAC ¶ 52.  Plaintiffs allege that these statements are false, because although Cotti uses marijuana

2   every day, she "usually" waited until Serdyukov got home so that he can care for the children

3   while she uses.  *See* TAC ¶ 52.  Plaintiffs also object to Gerhart's characterization of Cotti's

4   marijuana use as a "substance abuse problem," asserting that there is no evidence that Cotti has a

5   problem or that such problem interferes with her judgment.  *See* TAC ¶ 52.  That Plaintiffs do not

6   view Cotti's daily marijuana use as a problem, and disagree with Gerhart's assessment that it

7   impacts Cotti's judgment, does not make Gerhart's statement false.

8       *f.*      *"Both parents were arrested for domestic violence leaving the children without a*

9   *caretaker."*  TAC ¶¶ 51-52.  Plaintiffs allege that Gerhart's statement that the children were left

10  without a caretaker was false, because Plaintiffs had arranged for their licensed childcare provider,

11  Hernandez, to take charge of the children.  TAC ¶ 53.  However, Plaintiffs do not allege that

12  Gerhart was aware of Plaintiffs' arrangement with Hernandez.  Gerhart is not alleged to have been

13  at the home when Plaintiffs were arrested.  There are no facts in the TAC suggesting that Gerhart

14  was informed that Plaintiffs had made arrangements to leave their children with Hernandez.

15      Defendants make an additional argument that Plaintiffs did not have a legal right to

16  designate a caregiver of their choice when they were arrested, because custody of minor children

17  may be transferred only by court order.  The California Family Code provisions cited by

18  Defendants address who has legal custody of minor children.  *See* Cal. Fam. Code §§ 3010, 7505.

19  Those provisions do not speak to the rights of a parent who retains legal custody to designate a

20  particular caregiver, and thus do not appear relevant here.  However, Plaintiffs' allegations of

21  falsity with respect to the caretaker statement are insufficient for other reasons, discussed above.

22      After careful review of the TAC, the Court concludes that Plaintiffs have failed to allege

23  facts showing that Gerhart made deliberately false or reckless statements in the Initial Hearing

24  Report and Juvenile Dependency Petitions.  Moreover, even if Plaintiffs had alleged as much with

25  respect to Gerhart, Plaintiffs have not alleged any facts whatsoever showing that *Chang* knew the

26  documents contained false statements or acted with reckless disregard for the truth.  As discussed

27  above, Plaintiffs' allegations regarding Chang are purely conclusory.  "A plaintiff must present

28  more than conclusory allegations or a recital of [the] elements to state a claim for judicial

deception." *Wahid v. The Fed. Bureau of Investigation*, No. CV 15-01088-PHX-JJT (BSB), 2017 WL 1488324, at \*2 (D. Ariz. Apr. 26, 2017). The court need not accept conclusory allegations of judicial deception that are unsupported by the facts alleged in the complaint. *See Newt v. Kasper*, 85 F. App'x 37, 38 (9th Cir. 2003).

In opposition to the motion to dismiss, Plaintiffs appear to concede that their allegations of wrongdoing by Chang are inadequate, and that they need discovery to obtain facts necessary to state a claim against Chang. *See* Pls.' Opp. at 18, ECF 161. Plaintiffs argue as follows: "Plaintiffs Additionally [*sic*] demand this court to find that any failure to identify any intentional lie or a statement made with reckless disregard for the truth by any specific Defendant, such as Pa Chang, shall not be enough reason to dismiss because only after discovery will Plaintiff be able to determine in such specificity any additional claim." *Id*. This argument is without merit. Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face" in order to proceed with their claims against Chang. *Twombly*, 550 U.S. at 570. "A plaintiff may not rely solely on the speculative promises of discovery to survive a motion to dismiss." *Kabir v. Flagstar Bank, FSB*, No. SACV 16-360-JLS (JCGx), 2016 WL 10999326, at \*4 (C.D. Cal. May 11, 2016).

For all of these reasons, Defendants' motion to dismiss is GRANTED as to Chang.

### 3. Johnson and Nguyen

Johnson and Nguyen are named as defendants only in Count 1 (Warrantless Removal) of the First Cause of Action. They are the social workers who responded when police called DFCS to Plaintiffs' residence. *See* TAC ¶¶ 37-39. Plaintiffs allege that when Johnson and Nguyen arrived at the home, Hernandez (Plaintiffs' licensed childcare provider) had already arrived and was taking care of the children. *See* TAC ¶ 39. Johnson and Nguyen nonetheless took custody of the children and "placed the children at the receiving, assessment and intake center." TAC ¶ 41. Plaintiffs allege that this conduct was unlawful, and that the children should have been left with Hernandez or with Serdyukov's mother. TAC ¶¶ 40-41. The Court understands this count to allege a violation of Plaintiffs' right of familial association. Plaintiffs' opposition brief confirms that understanding, referring to the claim as "deprivation of familial companionship." *See* Pls.' Opp. at 10, ECF 161.

"The substantive due process right to family integrity or to familial association is well established." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). "A parent has a fundamental liberty interest in companionship with his or her child." *Id*. (quotation marks and citation omitted). The violation of the right to family integrity is subject to remedy under § 1983. *Id*. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). The Ninth Circuit has provided what appear to be conflicting legal standards for deprivation of familial association, holding in some cases that official conduct is actionable only if it "shocks the conscience," *see Lemire*, 726 F.3d at 1075, and in others that the appropriate standard is "unwarranted interference," *see Crowe v. Cty. of San Diego*, 608 F.3d 406, 441 n.23 (9th Cir. 2010). This Court need not resolve this conflict, as Plaintiffs fail to state a claim even under the lower "unwarranted interference" standard.

Plaintiffs allege that social workers Johnson and Nguyen violated Plaintiffs' right to familial association by taking the children into custody. Government officials may intrude on parents' custody of their children without prior judicial authorization when "they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001) (quotation marks and citation omitted). As pointed out by Defendants, Plaintiffs' own allegations establish that Johnson and Nguyen knew that both parents had been taken into police custody following an incident of domestic violence, and that as a result the parents would not be able to care for the children. Because the children were too young to care for themselves, the situation presented imminent danger of serious bodily injury unless the children were cared for by an adult. Johnson and Nguyen determined that the appropriate caregiver was DFCS rather than Hernandez or Serdyukov's mother, neither of whom was known to them. The Court concludes that under these circumstances, the facts alleged do not show that taking the children into protective custody constituted "unwarranted interference" with Plaintiffs'

1    familial rights rising to the level of a constitutional violation.

2          Defendants make an additional argument that Plaintiffs' claim against Johnson and

3    Nguyen fails because only the police had authority to take temporary custody of the minor

4    children.  *See* Cal. Welf. & Inst. Code § 305.  While the cited code section grants authority to

5    police to take custody of minors, other code sections grant social workers similar authority.  *See*

6    Cal. Welf. & Inst. Code § 306.  Plaintiffs argue, and the Court agrees, that factual issues regarding

7    which individuals and agencies made the decision to take the children into custody are not

8    appropriate for disposition at the motion to dismiss stage.

9          Defendants argue that even if Johnson and Nguyen made the decision to take the children

10   into custody rather than leaving them with Hernandez or Serdyukov's mother, and that decision

11   violated Plaintiffs' constitutional rights, Johnson and Nguyen are entitled to qualified immunity.

12   Defendants also argue that Johnson and Nguyen are entitled to absolute immunity for their

13   conduct.  The Court addresses those arguments in turn.

14                        a.      **Qualified Immunity**

15         "The doctrine of qualified immunity shields government officials performing discretionary

16   functions from liability for damages 'insofar as their conduct does not violate clearly established

17   statutory or constitutional rights of which a reasonable person would have known.'"  *Dunn v.*

18   *Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

19   (1982)).  In analyzing whether a government official is entitled to qualified immunity, the court

20   looks at two distinct questions: (1) whether the facts alleged, construed in the light most favorable

21   to the injured party, establish the violation of a constitutional right; and (2) whether the right was

22   clearly established such that a reasonable government official would have known that his conduct

23   was unlawful in the situation he confronted.  *Id*. at 1199.  A court may exercise its discretion in

24   deciding "which of the two prongs of the qualified immunity analysis should be addressed first in

25   light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 242

26   (2009).

27         The Court finds it appropriate to begin its qualified immunity analysis with prong two.  It

28   is Plaintiffs' burden under the second prong of the qualified immunity framework to identify a

United States District Court
Northern District of California

1    case indicating that the right allegedly violated was clearly established.  *Sharp v. County of*

2    *Orange*, 871 F.3d 901, 911 (9th Cir. 2017).  The precedent identified must be "controlling – from

3    the Ninth Circuit or Supreme Court – or otherwise be embraced by a consensus of courts outside

4    the relevant jurisdiction."  *Id.* (quotation marks and citation omitted).

5         The Supreme Court has "repeatedly told courts – and the Ninth Circuit in particular – not

6    to define clearly established law at a high level of generality."  *City & Cnty. Of San Francisco v.*

7    *Sheehan*, 135 S. Ct. 1765, 1775-76 (2015) (quotation marks and citation omitted).  Accordingly, it

8    is insufficient for Plaintiffs to identify a case holding generally that parents have constitutional

9    rights to familial association.  In light of the facts alleged in the TAC, Plaintiffs must identify a

10   case decided before May 23, 2017 (the date the children were taken into DFCS custody) clearly

11   establishing that when a social worker is called to the scene of a domestic violence incident by

12   police, and informed that both parents of minor children have been taken into police custody, the

13   social worker must defer to the wishes of the parents to leave the children with a third-party

14   caregiver rather than take the children into protective custody.  The precedent identified by

15   Plaintiffs must be clear enough that any social worker in the factual circumstances confronted by

16   Johnson and Nguyen would have known that taking the children into DFCS custody would violate

17   Plaintiffs' constitutional rights.  Plaintiffs have not identified such a case.

18        Accordingly, Plaintiffs' claims against Johnson and Nguyen are subject to dismissal on the

19   additional basis of qualified immunity.

20                          **b.    Absolute Immunity**

21        Defendants contend that Johnson and Nguyen are entitled to absolute immunity as well as

22   qualified immunity.  "Absolute immunity from private lawsuits covers the official activities of

23   social workers only when they perform quasi-prosecutorial or quasi-judicial functions in juvenile

24   dependency court."  *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017). Unlike

25   state statutory immunities, the absolute immunity based on a social worker's quasi-prosecutorial

26   or quasi-judicial conduct extends to § 1983 suits.  *See Beltran v. Santa Clara Cty.*, 514 F.3d 906,

27   908 (9th Cir. 2008).

28        "[L]ike a prosecutor, the social worker must make a quick decision based on perhaps

incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1109 (9th Cir. 2010) (quotation marks, citation, and alteration omitted). "Thus, the critical decision to institute proceedings to make a child a ward of the state is functionally similar to the prosecutorial institution of a criminal proceeding, and, therefore, deserves absolute immunity." *Id.* (quotation marks and citation omitted).  "The factor that determines whether absolute immunity covers a social worker's activity or 'function' under scrutiny is whether it was investigative or administrative, on one hand, or part and parcel of presenting the state's case as a generic advocate on the other." *Hardwick*, 844 F.3d at 1115.  "Absolute immunity is available only if the function falls into the latter category." *Id.*

It is unclear from the face of the TAC whether Johnson and Nguyen engaged in investigative or administrative work that would fall outside the absolute immunity.  The Court therefore denies the motion to dismiss based on absolute immunity.  However, as discussed above Johnson and Nguyen are entitled to dismissal based on insufficient facts and qualified immunity.

Defendants' motion to dismiss is GRANTED as to Johnson and Nguyen.

### 4.    Leave to Amend

When the Court grants a motion to dismiss, leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors). The Court finds no undue delay (factor 1) or bad faith (factor 2).  While Plaintiffs have repeatedly failed to cure deficiencies by amendment, this order represents the first time the Court has offered specific guidance to Plaintiffs regarding these Defendants.  The Court therefore does not find Plaintiffs' failure to cure deficiencies (factor 3) to weigh against allowing leave to amend.

However, the Court concludes that leave to amend would be futile (factor 5).  Nothing in this record, or in Plaintiffs' four iterations of their complaint, suggests that they could state a viable claim for relief against LeRue, Chang, Johnson, or Nguyen.  Given that conclusion, it

United States District Court
Northern District of California

1    would be unduly prejudicial to require Defendants to continue litigating these claims (factor 4).

2    The Court thus concludes that further leave to amend is not appropriate.

3           The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

**IV.    DISMISSAL OF THE ACTION IS WARRANTED**

5           The Court now has dismissed all defendants.  Accordingly, dismissal of the action is

6    appropriate.  Dismissal is WITH PREJUDICE as to those defendants whose motions to dismiss

7    were granted on the merits:  Rebekah Children's Services, City, SJPD, Judge Tondreau, Choi,

8    Arnold, County, LeRue, Chang, Johnson, and Nguyen.  Dismissal is WITHOUT PREJUDICE as

9    to those defendants who were dismissed as improperly added or for failure to effect service of

10   process:  Gaona, Avila, Tran, FLA, DAC, Schroeder, Faulconer, LACY, Gerhart, DSS, DFCS,

11   SSA, and Guy.

**V.     ORDER**

13          (1)     Plaintiffs' Motion for Relief is DENIED;

14          (2)     The Motion to Dismiss brought by Defendants LeRue, Chang, Johnson, and

15                  Nguyen is GRANTED WITHOUT LEAVE TO AMEND;

16          (3)     The action is DISMISSED WITH PREJUDICE as to Defendants Rebekah

17                  Children's Services, City, SJPD, Judge Tondreau, Choi, Arnold, County, LeRue,

18                  Chang, Johnson, and Nguyen, and WITHOUT PREJUDICE as to Defendants

19                  Gaona, Avila, Tran, FLA, DAC, Schroeder, Faulconer, LACY, Gerhart, DSS,

20                  DFCS, SSA, and Guy; and

21          (4)     This order terminates ECF 160 and 165.

Dated:  May 21, 2020

_____
BETH LABSON FREEMAN
United States District Judge

*United States District Court*
*Northern District of California*

26